ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee, v. JUAN PABLO GONZALEZ-LOYA, Indiv. and as Adm'r of the Estate of Flor E. Loya, Deceased, *et al.*, Defendants-Appellants.

First District (5th Division) No. 1—91—0981

Opinion filed March 6, 1992.

Philip J. Ryan, of Ryan & Ryan, Ltd., of Waukegan, for appellants.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, Peter C. Morse, and Bruce L. Carmen, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal from a declaratory judgment action involving the construction of an automobile liability insurance policy issued by Allstate Insurance Company (Allstate) to Juan Pablo Gonzalez-Loya and his family members. Allstate filed a declaratory judgment action which asked the trial court to declare that the defendants are not entitled to underinsured motorist benefits pursuant to the policies of in-

surance issued to the defendants for their claims resulting from the injuries and death of Flor E. Loya.

On September 16, 1988, Flor E. Loya, a pedestrian, was struck and severely injured by a truck driven by James Patterson. On November 8, 1988, Flor E. Loya (Flor) died as a result of the injuries she sustained on September 16, 1988.

Flor's hospital bill from Loyola Hospital (Loyola) totaled $354,000. Loyola has asserted a hospital lien for that amount.

Flor is survived by her husband, Juan Pablo Gonzalez-Loya (Juan Pablo), and her five children, Flor D. Loya, born May 4, 1965; Laura Loya, born February 27, 1966; Juan P. Loya, born April 29, 1968; Claudia Gonzalez, born April 1, 1972; and Melissa Gonzalez, born February 3, 1977.

Juan Pablo and Flor's five children filed a lawsuit against James Patterson (Patterson), the driver of the truck, for the following causes of action: (1) wrongful death; (2) survival; (3) family expense; and (4) loss of consortium.

Patterson had an insurance policy with State Farm Insurance Company (State Farm) with available liability limits of $100,000 for all claims against him arising out of Flor's injury and death. State Farm has offered the $100,000 policy limit in full settlement of all claims against Patterson.

Juan Pablo owned five automobiles at the time of the accident. Four of the automobiles were insured by Allstate under one policy of insurance. The fifth automobile was covered under a separate policy issued by Allstate. The policy language of the two insurance policies was identical. Each policy provided underinsured motorist benefits of $100,000 each person/$300,000 each occurrence and $50,000 of medical expense coverage. Allstate has tendered $50,000 in medical expense coverage and that amount or coverage is not in dispute.

Loyola has agreed to settle its entire $354,000 lien claim for the payment of the $100,000 liability limits of the State Farm policy and the $50,000 medical payment coverage of the Allstate policy. The $100,000 offered by State Farm would be allocated to the family expense act claim to settle Loyola's claim in full. During the pendency of this appeal the trial court has approved State Farm's settlement offer. The result of the settlement and distribution is that the five children of the decedent, her husband and the decedent's estate receive nothing from the driver's liability policy except payment of Flor's medical bills.

Decedent's husband, the decedent's children and the decedent's estate presented multiple claims to Allstate for underinsured motorist

benefits. Allstate denied that the claimants were entitled to any underinsured motorist benefits and denied that any of the underinsured motorist coverages could be stacked. On May 15, 1990, Allstate filed a declaratory judgment action.

On July 9, 1990, defendants filed a motion for judgment on the pleadings claiming that Allstate's insurance policies were ambiguous and further did not prohibit the stacking of underinsured motorist benefits.

On August 21, 1990, Allstate filed its own motion for judgment on the pleadings claiming the subject insurance policies were not ambiguous and further that the policies prohibited stacking of underinsured motorist benefits.

During the next several months the parties filed various other pleadings. On November 27, 1990, the trial court heard argument and granted Allstate's motion for judgment on the pleadings. At the same time the trial court denied defendants' motion for judgment on the pleadings.

On December 6, 1990, defendants filed a motion to vacate the order of November 27, 1990, and requested leave to take additional discovery. On December 17, 1990, the trial court stayed the effect of its November 27, 1990, order. On January 9, 1991, the trial court granted defendants leave to conduct limited discovery and set the matter for hearing on March 20, 1991. On March 20, 1991, an agreed order was entered lifting the previous stay and the defendants' motion to vacate was withdrawn. The defendants filed their notice of appeal on March 21, 1991.

On appeal the defendants argue that the language of the various Allstate policies is ambiguous with respect to its underinsured motorist coverage and further that it does not prohibit the stacking of underinsured motorist benefits.

For the following reasons, unfortunately, we must affirm the decision of the trial court.

Defendants argue that the language of the Allstate policies that purports to contain the underinsured motorist provisions is ambiguous and unclear. Defendants maintain that a review of section SS (the section containing the uninsured and underinsured motorist provisions) reveals that its language is directed at uninsured motorist coverage and not underinsured motorist coverages; thus, there is no insuring agreement for underinsured motorist coverage.

It is the defendants' position that because Allstate has failed to set forth any limiting language with regard to underinsured motorist coverage, each claimant is entitled to a claim of up to $100,000 on

each policy on each vehicle, with a total amount payable by Allstate to all claimants not to exceed $300,000 on each of the five vehicles ($1,500,000 in total).

In opposition Allstate makes three arguments: First, Allstate maintains that its policy provisions are equally applicable to underinsured and uninsured motorist coverage; second, the Loyas' policies plainly preclude stacking; third, even if this court allows stacking and thus determines that underinsured motorist coverage applies, only a single "each person" limit is available.

The law relating to the interpretation of the language of insurance policies is clear. If the language of an insurance policy is ambiguous, it must be construed against the insurance company and in favor of the insured. (*West American Insurance Co. v. Vago* (1990), 197 Ill. App. 3d 131, 553 N.E.2d 1181.) However, if a policy of insurance is clear and unambiguous, it must be enforced according to its terms. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 429 N.E.2d 1203.) "All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists." (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5, 429 N.E.2d 1203, 1205.) If the words of an insurance policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written, and the parties should be bound to the agreement into which they entered. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 495, 475 N.E.2d 872.) This court cannot strain or torture the language of an insurance policy to create an ambiguity.

Based on the aforestated rules, this court must affirm the trial judge.

The declaration page of each policy states:

"SS UNINSURED MOTORISTS
   BODILY INJURY
   $100,000 EACH PERSON—$300,000 EACH ACCIDENT
   (INCLUDES UNDERINSURED MOTORISTS PROTECTION)."

The Illinois amendatory endorsements of the Loyas' policies provide as follows:

"An uninsured auto is:

* * *

(5) An underinsured motor vehicle which has liability protection in effect and applicable at the time of the accident in an amount equal to or greater than the amounts specified for

bodily injury or property damage liability by the financial responsibility laws of Illinois, but less than the limit of liability for Coverage SS shown in the declaration page."

Section 143a—2(3) of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(3)) defines an underinsured motor vehicle as:

"[A] motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits of underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle."

Allstate's definition of an underinsured motor vehicle is completely consistent with the provisions of the Illinois revised statute related to underinsured motorist coverage. Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(3).

■ Reading each of the Loyas' Allstate policies in their entirety, each is plain and unambiguous. The policies expressly define an "uninsured" motor vehicle to include an "underinsured" motor vehicle. Thus, through the definition of "uninsured motorist," all of Allstate's "Coverage SS" provisions apply to underinsured motorist coverage.

Defendants maintain that the fact that Allstate has used both terms "uninsured" and "underinsured" separately in its policy in itself causes an ambiguity. In support of their contention, defendants point to the following portion of the "Limits of Liability" section:

"(2) Damages payable will be reduced by:

(a) all amounts paid by or on behalf of the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage of this or any other auto policy.

\* \* \*

In addition, the limits for Coverage SS will be reduced by all amounts paid on or behalf of the owner or operator of the underinsured motor vehicle."

Defendants claim that by using the terms "uninsured" and "underinsured motorist" in the same limitation section, Allstate has created two distinct terms and therefore it is ambiguous as to when the term "uninsured motorist" is intended to include "underinsured motorist" and when it is not. We disagree with the defendants' argument. As previously stated, a plain reading of the policy discloses that "uninsured" always includes "underinsured." The fact that the policy reiterates a clause using only the term "underinsured" does not render the terms conflicting or ambiguous, it only indicates poor drafting on the part of Allstate.

■■ Under the Loyas' Allstate policies, a party is not an underinsured motorist if he had liability protection equal to or greater than the limit of liability under Allstate's underinsured motorist provision. The State Farm policy issued to Patterson contained liability limits equal to the underinsured motorist limits under the Loyas' Allstate policies; therefore, underinsured motorist coverage does not apply in this case.

The Loyas argue that because their two Allstate policies insured five vehicles, they are entitled to stack their coverage SS limits, resulting in $500,000 in coverage to trigger underinsured motorist coverage. Allstate maintains, and we agree, that the Loyas' argument must fail because the Loyas' policies clearly and unambiguously prohibit stacking.

The "Limits of Liability" clauses in the coverage SS sections of the Loyas' policies provide:

"(1) The coverage limit stated on the declarations page for:

(a) 'each person' is the total limit for all damages arising out of bodily injury to one person in any one motor vehicle accident.

(b) 'each accident' is the total limit for all damages arising out of bodily injury to two or more persons in any one motor vehicle accident.

(c) 'each accident' is the total limit for all damages arising out of injury to or destruction of all property insured under this coverage in any one motor vehicle accident.

The uninsured motorists limits apply to each insured auto as stated on the declarations page. This means the insuring of more than one person or auto under this or other auto policies will not increase our uninsured motorist limit of liability beyond the amount shown for any one auto, even though a separate premium is charged for each auto."

The "Limits of Liability" clause states "the insuring of more than one person or auto under this or other auto policies will not increase our uninsured motorist limit of liability beyond the amount shown for any one auto, even though a separate premium is charged for each auto." Thus, despite the fact that the Loyas paid the premiums on five autos, they are only entitled to the proceeds of one policy. This provision clearly prohibits the stacking of underinsured motorist coverage.

The "If There is Other Insurance" clauses in the coverage SS sections of the Loyas' policies provide:

> "If more than one policy applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for uninsured motorist coverage. We will bear our proportionate share with other uninsured motorists benefits. This applies no matter how many autos or auto policies may be involved whether written by Allstate or another company."

The "If There Is Other Insurance" clause provides that "the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for uninsured motorist coverage." Each of the Loyas' policies had a limit of $100,000; thus, $100,000 is the highest limit available to the Loyas for underinsured motorist benefits. This provision also prohibits the stacking of underinsured motorist benefits.

Additionally, in their general conditions, under a section entitled "Combining Limits of Two or More Autos Prohibited," the Loyas' policies provide:

> "This provision applies only when you have two or more autos insured in your name. If one of these autos is involved in an accident, the coverage limit will be as shown on the declarations page for that auto. If none of these autos is involved in the accident, you may select any single auto shown on the declarations page and the coverage limits applicable to that auto will apply.
>
> In either case, coverage on any other auto may not be added to or stacked upon the coverage of the involved or selected auto."

Thus the Loyas were entitled to select the coverage limits of any one policy. This provision clearly prohibits the stacking of the coverage limits of more than one policy.

Section 143(a)—2(b) (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(6)) provides that if an insurance company intends to prohibit the stacking of underinsured motorists benefits, it must expressly say so. Further,

it is not against public policy to limit or prohibit stacking insurance policies in situations where multiple claims are made, even where separate premiums are paid. *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539.

We find that the subject Allstate policies were not ambiguous with regard to underinsured motorist coverage and the language that prohibits the stacking of benefits. Moreover, the trial judge's decision should not be disturbed unless his decision was against the manifest weight of the evidence. *Georgantas v. Country Mutual Insurance Co.* (1991), 212 Ill. App. 3d 1, 570 N.E.2d 870.

The parties are bound by the agreement they entered (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872), and the agreement in this case provides that Allstate is not required to pay underinsured motorist benefits.

It is unfortunate that the hospital is treated better in a case of this kind than the Loyas. However, the remedy for cases such as this lies with the legislative branch of government, not the judicial. For all of the reasons set forth above, we affirm the decision of the trial court.

Judgment affirmed.

LORENZ and GORDON, JJ., concur.