SARAH SHEFNER et al., Plaintiffs-Appellants, v. ILLINOIS FARMERS INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 2—92—0461

Opinion filed April 8, 1993.

Patrick A. Salvi and Megan E. Chadwick, both of Law Offices of Patrick A. Salvi, of Waukegan, for appellants.

Glen E. Amundsen, of Querrey & Harrow, Ltd., of Waukegan, and Michael Resis and Mary T. Nagel, both of Querrey & Harrow, Ltd., of Chicago, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs, Sarah Shefner and Mark Brodie, appeal from a judgment declaring Sarah Shefner's rights to uninsured motorist coverage under two automobile insurance policies issued by defendant, Illinois Farmers Insurance Company. The trial court held that Shefner was entitled to coverage under the policy issued for the car in which she was riding at the time of her collision with a vehicle driven by an uninsured motorist, but that she was not entitled to coverage under a second policy insuring another car plaintiffs own. On appeal, plaintiffs argue that Shefner is entitled to collect under the second policy either in addition to or alternatively to the first policy.

Shefner was injured when the 1987 Buick Skylark in which she and Brodie, her husband, were riding collided with a motorcycle driven by an uninsured motorist, James Staton, and owned by another uninsured motorist, John Sistrunk. Plaintiffs sought a declaration of Shefner's rights under (1) the policy insuring the 1987 Buick Skylark (the Skylark policy) and (2) the policy insuring plaintiffs' 1990 Chevrolet Corsica (the Corsica policy). The trial court held that Shefner is entitled to up to $50,000 uninsured motorist coverage under the Skylark policy but that she is not entitled to any uninsured motorist coverage under the Corsica policy.

On appeal, plaintiffs maintain that Shefner is entitled to collect uninsured motorist coverage (limited to $100,000) under the Corsica policy either in addition to or as an alternative to the uninsured motorist coverage (limited to $50,000) which defendant concedes she may collect under the Skylark policy. We disagree, and we affirm the trial court's judgment.

Most of the relevant facts are undisputed. The parties disagree primarily over the meaning of policy provisions. Brodie purchased the

Skylark policy; Shefner purchased the Corsica policy. Each policy insures both plaintiffs. Each policy costs a separate premium. The policies have identical "uninsured motorist" clauses and identical "other insurance" clauses. Each policy states:

"DEFINITIONS

Your insured car means:

1. The vehicle described in the Declarations of this policy or any **private passenger car** or **utility car** with which you replace it.

2. Any additional **private passenger car** or **utility car** of which you acquire ownership during the policy period. Provided that:

a. You notify us within 30 days of its acquisition, and

b. As of the date of acquisition, all private passenger and utility cars you own are insured with a member company of the Farmers Insurance Group of Companies.

\* \* \*

PART II—UNINSURED MOTORIST

Coverage C—Uninsured Motorist Coverage

(Including Underinsured Motorist Coverage)

We will pay all sums which an **insured person** is legally entitled to recover as **damages from the owner or operator of an uninsured motor vehicle because of bodily injury** sustained by the **insured person**. The **bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle.**

\* \* \*

Other Insurance

\* \* \*

4. We will not provide insurance for a vehicle other than **your insured car**, unless the owner of that vehicle has no other insurance applicable to this part.

5. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability."

The trial court granted summary judgment for defendant. The court held that the unambiguous language of the policies entitled plaintiffs only to the uninsured motorist coverage provided by the Skylark policy. Plaintiffs timely appealed.

The parties agree that Shefner is entitled to uninsured motorist coverage under the Skylark policy, as she was an insured party under that policy and was riding in the Skylark at the time of the accident. Plaintiffs argue further that the Corsica policy also applies to the accident even though Shefner was not using the Corsica at the time. Plaintiffs argue that to deny Shefner coverage under both policies would violate section 143a(2) of the Illinois Insurance Code (section 143a(2)) (Ill. Rev. Stat. 1989, ch. 73, par. 755a(2)), which establishes a minimum level of uninsured motorist coverage to which a policyholder is entitled. Defendant replies that the plain language of paragraph No. 4 limits recovery under the Corsica policy to accidents involving the Corsica. Defendant maintains that this limitation does not violate public policy, as the Skylark policy provides Shefner with coverage above the statutory minimum. Defendant insists that the coverages of the policies "follow the vehicle" and do not "follow the person."

We begin with general principles. The construction of insurance policies is a question of law that this court determines *de novo*. (*Armstrong v. State Farm Mutual Automobile Insurance Co.* (1992), 229 Ill. App. 3d 971, 975.) Our overriding purpose is to ascertain and effectuate the intention of the parties. (*Kaufmann v. Economy Fire & Casualty Co.* (1979), 76 Ill. 2d 11, 16; *Monsalud v. State Farm Mutual Automobile Insurance Co.* (1991), 210 Ill. App. 3d 102, 106.) Where policy language is unambiguous, we must glean the parties' intent directly from that language, without resort to rules of construction, unless to do so would violate public policy. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 423; *Bruder v. Country Mutual Insurance Co.* (1992), 232 Ill. App. 3d 221, 224.) A court should give words in the policy their plain and ordinary meaning and should not search for an ambiguity where none exists. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5.) However, ambiguities must be construed in favor of the insured. (*Menke*, 78 Ill. 2d at 423.) A provision is ambiguous if it can reasonably be read to have more than one meaning. (*Milwaukee Guardian Insurance, Inc. v. Taraska* (1992), 236 Ill. App. 3d 973, 974.) In determining whether a policy is ambiguous in a certain regard, a court should consider the policy as a whole. *Great Central Insurance Co. v. Wascomat of America* (1992), 234 Ill. App. 3d 150, 153-54.

Plaintiffs make three attacks on the trial court's judgment. First, they argue that paragraph No. 5 of the policies does not prevent plaintiffs from electing the $100,000 uninsured motorist coverage of the Corsica policy over the $50,000 uninsured motorist coverage of the Skylark policy. Second, plaintiffs argue that section 143a(2), as in-

terpreted by *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, prevents defendant from limiting Shefner's recovery to that provided by the Skylark policy. Third, plaintiffs argue that Shefner is entitled both to uninsured motorist benefits under the Skylark policy and to underinsured motorist coverage under the Corsica policy.

■ Plaintiffs' first argument is valid but inconclusive. Paragraph No. 5 limits plaintiffs' recovery to the highest amount provided by any *applicable* insurance policies defendant issued plaintiffs. Thus, *if* both policies apply to the accident, plaintiffs may elect the $100,000 coverage of the Corsica policy. Plaintiffs' argument begs the question central to this case—whether the Corsica policy is "applicable" here. The issue is not whether plaintiffs may stack two applicable policies, but whether both policies are applicable. To answer this question, we must consider both the policy language and the requirements of section 143a(2).

The plain language of paragraph No. 4 is that the Corsica policy does not apply to this accident because plaintiff was not riding in the Corsica at the time of the accident. Paragraph No. 4 of the Corsica policy states straightforwardly that defendant will not pay uninsured motorist coverage for a vehicle "other than your insured car" unless the owner of that other vehicle has no other uninsured motorist coverage. Under the facts of this case, the Skylark is a vehicle "other than your insured car" under the Corsica policy. The qualification at the end of paragraph No. 4 does not help plaintiffs, as the owner of the Skylark has uninsured motorist coverage under the Skylark policy (as defendant has always conceded).

Plaintiffs argue, however, that we ought not read paragraph No. 4 of the Corsica policy literally. They maintain that under section 143a(2) and *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, paragraph No. 4 does not deny Shefner uninsured motorist coverage under the Corsica policy merely because she was not riding in that car when she was injured. Defendant replies that here, unlike in *Squire*, the exclusion at issue does not violate public policy because, even with full effect given to paragraph No. 4, Shefner would still be able to collect uninsured motorist coverage (under the Skylark policy) in excess of the minimum set forth in section 143a(2).

Section 143a(2) provides, as pertinent here:

"No policy [of automobile insurance] *** shall be *** issued for delivery in this State with respect to any private passenger or recreational motor vehicle that is designed for use on public highways and that is either required to be registered in this State *** and is not covered by collision insurance under the

provisions of such policy, unless coverage is made available in the amount of the actual cash value of the motor vehicle described in the policy or $15,000 whichever is less *** for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of property damage to the motor vehicle described in the policy." Ill. Rev. Stat. 1991, ch. 73, par. 755a(2).

The purpose of this provision is to place the insured in substantially the same position as if the uninsured driver had been minimally insured. (*Hoglund v. State Farm Mutual Automobile Insurance Co.* (1992), 148 Ill. 2d 272, 277; *Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 555.) Here, plaintiffs are in no worse position than had the uninsured driver been minimally insured. Defendant concededly will pay Shefner $50,000, which exceeds the minimum sum of $15,000 specified by section 143a(2). Moreover, the exclusion of paragraph No. 4 is conditional; it does not operate unless the insured already has uninsured motorist coverage. Thus, by its terms, paragraph No. 4 of the Corsica policy does not necessarily prevent a person insured by that policy from being placed in the position she would be in had the uninsured motorist been minimally insured. At least as long as the preexisting coverage equals or exceeds the statutory minimum, there is no conflict between the Corsica policy and section 143a(2). See *Nationwide Mutual Insurance Co. v. Hecker* (1989), 183 Ill. App. 3d 13, 16.

Plaintiffs insist that we read *Squire* broadly to hold that an insurer may never condition recovery of uninsured motorist payments on what car the insured was driving at the time of the injury. We believe that such a broad reading of *Squire* cannot be sustained if the language upon which plaintiffs rely is taken in proper context.

In *Squire*, the plaintiff, a minor, was insured under a single policy and a subsequent endorsement to that policy. She was injured when an uninsured motorist caused another car to strike her as she was standing on a parkway. The primary policy contained "Family Protection," for which a $4 premium had been paid. This protection included uninsured motorist coverage, with limits of $10,000 per person injured. However, the policy contained an exclusion for "bodily injury to an insured while occupying an automobile (other than an insured automobile [one described in the policy and afforded coverage therein]) owned by the named insured or a relative." The endorsement, for which a separate $1 premium was paid, provided coverage for a second family automobile. It contained a similar exclusion.

The plaintiff argued that she was entitled to stack uninsured motorist coverage under both policies. The defendant responded that the purpose of the endorsement was to protect against an accident caused by an uninsured motorist that the plaintiff or family members suffered while she was (or they were) riding in the second automobile. The defendant argued that the purpose of the endorsement, in consideration of which the second premium had been paid, was to enable the insured to collect the coverage that was excluded by the original policy's exclusion provision.

The supreme court rejected the defendant's argument, holding that this argument's premise was invalidated by section 143a(1). The court held that the exclusion in the *original* policy was invalid because, if upheld, this exclusion would have meant that the first policy did not provide any uninsured motorist coverage to the plaintiff. Such a denial would violate the statutory requirement that every automobile liability insurance policy issued in the State provide uninsured motorist coverage at a minimum of $10,000 per each person injured up to $20,000 per accident. (*Squire*, 69 Ill. 2d at 176-78.) Thus, the defendant's construction of the endorsement was unsound because it implied that there was no consideration for the $1 plaintiff's family paid for the endorsement, *i.e.*, if the insureds were already covered under the original policy, they would have gained nothing by paying an extra $1 premium for the endorsement. The defendant's argument—that the consideration for the second premium was to enable the insureds to collect for damages excluded by the original policy—could not hold water if the exclusion in the original policy was invalid.

Because the exclusion in the original policy was invalid, the coverage allegedly provided in return for the extra premium paid for the endorsement had already been provided by the original policy. Reasoning that plaintiff's family "[c]ertainly *** had no intention of paying the defendant for coverage which they were already receiving" (*Squire*, 69 Ill. 2d at 180), the supreme court concluded that the intention of the parties in agreeing to the endorsement was to provide additional indemnification for injuries resulting from risks covered by the original policy. Thus, the plaintiff could recover under both the original policy and the endorsement. *Squire*, 69 Ill. 2d at 180-81.

In arguing that *Squire* prevents the defendant from denying her recovery under the Corsica policy, plaintiff Shefner emphasizes this specific language from the court's opinion:

"[S]ection 143a requires coverage of insured persons regardless of the motor vehicle the uninsured motorist is driving, and regardless of the vehicle in which the insured person is located

when injured. Insofar as the exclusion contained in the [original policy] would make coverage dependent upon the insured not being in a vehicle unlisted in the policy, that exclusion violates section 143a [and is unenforceable]." *Squire*, 69 Ill. 2d at 179.

We do not believe that *Squire* invalidates the exclusion in paragraph No. 4 of either policy in the case at bar. Unlike the primary policy in *Squire*, the Skylark policy does not, when read literally, deprive the plaintiff of uninsured motorist coverage merely because of the car in which she rode at the time of her injury. As defendant concedes, plaintiff Shefner is entitled to up to $50,000 uninsured motorist coverage under the Skylark policy.

Moreover, paragraph No. 4 is phrased so that the insured may never be denied uninsured motorist coverage solely because the car in which he or she was riding at the time of the accident is not the one covered by the policy. Paragraph No. 4 of the Skylark policy enables an insured not injured while riding in the Skylark to collect uninsured motorist coverage in an amount over the statutory minimum if the insured otherwise would be ineligible for such coverage. This safety net distinguishes the exclusion of paragraph No. 4 from that at issue in *Squire*. The same may be said of paragraph No. 4 of the Corsica policy.

■ However, even having concluded that paragraph No. 4 does not violate public policy, we must determine what the parties intended when plaintiffs purchased the Corsica policy. In making this determination, "[w]e cannot ignore that a premium was paid for [the additional] uninsured motorist protection." (*Hoglund*, 148 Ill. 2d at 278.) Courts presume that the parties to a contract of insurance intended that the purchasers would receive something of value in return for their premium and not merely coverage that they would already have received. *Hoglund*, 148 Ill. 2d at 278; *Monsalud*, 210 Ill. App. 3d at 106.

Defendant argues that plaintiffs received valuable consideration for the price they paid for the Corsica policy. It maintains that the Corsica policy enables plaintiffs to recover damages for any injuries either may sustain while riding in the Corsica. The force of this argument is not entirely clear. Had plaintiffs never insured the Corsica, paragraph No. 4 of the Skylark policy would still have enabled them to collect uninsured motorist coverage under the Skylark policy for an accident involving the Corsica. Thus, in this limited sense, the premium paid for the Corsica policy might be seen as redundant.

However, we do not believe that application of the "premium rule" (*Monsalud*, 210 Ill. App. 3d at 106) requires us to hold that

plaintiffs are entitled to coverage under the Corsica policy in this case. Granting that plaintiffs would recover damages against an uninsured motorist even had they not purchased the Corsica policy, we cannot say they received no extra value for their purchase. The Corsica policy, like the Skylark policy, includes other types of coverage besides uninsured motorist coverage. Also, it enables plaintiffs to recover uninsured motorist coverage up to $100,000, rather than $50,000, for accidents involving the Corsica. Thus we decline to read an ambiguity into otherwise clear policy language.

■■ Plaintiffs' final argument is that Shefner is entitled to recover uninsured motorist coverage under the Skylark policy and underinsured motorist coverage under the Corsica policy, for a total recovery of as much as $150,000. Apparently, plaintiffs reason that if the Skylark policy does not fully compensate Shefner for her losses, she is thus "underinsured" and thereby entitled to the underinsured motorist coverage of the Corsica policy.

This argument is frivolous. "Underinsured motorist coverage" comes into play only if the *offending motorist* is "underinsured" as that term is used in the Insurance Code. (See Ill. Rev. Stat. 1991, ch. 73, par. 755a—2(4).) "Underinsured motorist" does not denote a *policyholder* who is dissatisfied with the amount of applicable coverage. Plaintiffs have maintained throughout that the accident at issue was caused by an uninsured motorist driving an uninsured vehicle. Underinsured motorist coverage is irrelevant to this case.

We hold that the trial court properly determined that plaintiffs are entitled to a limit of $50,000 in uninsured motorist coverage pursuant to the Skylark policy.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER and BOWMAN, JJ., concur.