JAMES W. VANEK, Plaintiff-Appellant, v. ILLINOIS FARMERS INSUR-
ANCE COMPANY, Defendant-Appellee.

Second District    No. 2—93—0203

Opinion filed June 14, 1994.

John B. Kincaid, of Mirabella & Kincaid, of Wheaton, for appellant.

Danny L. Worker and John G. Mulroe, both of Worker & Power, of
Chicago, for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:
Plaintiff, James W. Vanek, brought a declaratory judgment action
against defendant, Illinois Farmers Insurance Company (Farmers),
seeking a determination of his rights to underinsured motorist (UIM)
coverage under three policies issued to him by Farmers. The circuit

court dismissed the complaint for a failure to state a cause of action, and plaintiff appeals from that order.

Plaintiff was involved in an accident with Kristen O'Leary on July 7, 1991. O'Leary was insured by State Farm Insurance Company (State Farm), and State Farm tendered its limits of $50,000 to plaintiff. Plaintiff filed suit against Farmers, alleging that he was entitled to UIM coverage under a motorcycle policy and two automobile policies on which plaintiff was the named insured. Plaintiff also requested attorney fees pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1992)). Farmers filed a motion to dismiss count I of the complaint under section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) because it failed to state a cause of action. Specifically, defendant alleged that the motorcycle policy which covered the motorcycle upon which plaintiff was riding at the time of the accident did not provide UIM coverage. Defendant further alleged that each of the Farmers' policies limited liability to the coverage contained in the policy for the vehicle which plaintiff was driving at the time of the accident so plaintiff was not entitled to recover under his automobile policies. The trial court granted defendant's motion for judgment on the pleadings. The trial court dismissed as moot plaintiff's second count for attorney fees.

When reviewing a circuit court's grant of judgment on the pleadings, a reviewing court must determine whether the allegations in the complaint, when viewed in a light most favorable to plaintiff, are sufficient to state a cause of action upon which relief may be granted. (*Howard v. Druckemiller* (1992), 238 Ill. App. 3d 937, 941.) This court will affirm the order for judgment on the pleadings only if no set of facts can be proven under the pleadings which would entitle plaintiff to relief. (*Griffis v. Board of Education, District 122* (1979), 72 Ill. App. 3d 784, 787.) We turn now to an examination of the policies involved in this dispute.

Plaintiff was the named insured on a motorcycle policy insuring the motorcycle which he was riding at the time of the accident. Plaintiff was also the named insured on two automobile policies which contain uninsured motorist (UM) coverage in the amounts of $100,000 per person/$300,000 per occurrence and which state both on the declarations page and in the caption for the UM coverage that the UM coverage includes UIM coverage. The declarations page of the motorcycle policy shows coverage in the amount of $20,000 per person/$40,000 per occurrence for UM coverage, but does not reflect any separate coverage limits for UIM coverage.

■ Despite the fact that the motorcycle policy does not contain

any specific language regarding UIM coverage, we note that under the UM coverage section an "uninsured motor vehicle" includes a motor vehicle which is "b. [i]nsured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of Uninsured Motorists Coverage shown in the Declarations." This definition is consistent with the definition of "underinsured motor vehicle" as used in the Insurance Code (215 ILCS 5/143a—2(4) (West 1992)). (See *Allstate Insurance Co. v. Gonzalez-Loya* (1992), 226 Ill. App. 3d 446, 450.) The Illinois Insurance Code provides:

> "(4) For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident." (215 ILCS 5/143a—2(4) (West 1992).)

Definition b of "uninsured motor vehicle" in the motorcycle policy mirrors that of the definition of "underinsured motor vehicle" used by Farmers in its other policies wherein UIM coverage was specifically included in UM coverage by virtue of the inclusions of the definition of "underinsured motor vehicle" within the definition of "uninsured motor vehicle." Therefore, while the motorcycle policy may not use the term "UIM coverage" to describe this coverage, the UM portion includes coverage for what is statutorily referred to as UIM coverage.

Even determining that the motorcycle policy provides UIM coverage as part of UM coverage, under the circumstances of this case, the motorcycle policy would not provide any coverage to this plaintiff. The UIM coverage only comes into play if the bodily injury policy limits of O'Leary's policy are less than the limits of the UIM coverage available to plaintiff under the motorcycle policy. Since O'Leary had $50,000 limits and plaintiff's UIM coverage was part of the UM coverage with limits of $20,000 per person, there would be no UIM coverage available to plaintiff under the motorcycle policy.

■ We must next consider whether there is any language in the motorcycle policy which prohibits plaintiff from looking to his two automobile policies for applicable UIM coverage for this accident. Under the UM coverage portion of the policy, which we have

determined includes UIM coverage, there is a section entitled "Limits of Liability." That section provides in part:

"The limits of liability shown in the Declarations apply subject to the following:

1. The limit for 'each person' is the maximum for bodily injury sustained by any person in any one accident.

2. Subject to the limit for 'each person,' the limit for 'each accident' is the maximum for bodily injury sustained by two or more persons in any one accident.

3. Subject to the law of the state of the occurrence, we will pay no more than these maximums regardless of the number of vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the accident."

The clear language of paragraph 3 of this section limits coverage to the amount of UM coverage listed on the declarations page of the motorcycle policy regardless of how many policies are involved. Therefore, this limitation would bar plaintiff from seeking coverage under the UM coverage of his other two policies.

Plaintiff urges us to find the language in the above-cited restrictive provision ambiguous by virtue of the fact that it does not specifically state that it is applicable to UIM coverage. In *Allstate* (226 Ill. App. 3d 446), the court considered a policy which included UIM coverage within its UM coverage. In that policy, the definition of "uninsured motor vehicle" included an "underinsured motor vehicle," with the latter term being further defined. The court rejected defendants' argument that the provisions of the UM coverage section did not apply to UIM, stating that through its definition of "uninsured vehicle" to include "underinsured vehicle," all of the provisions of the UM coverage applied to the UIM coverage. (*Allstate*, 226 Ill. App. 3d at 450.) Likewise, in this case, while not specifically referring to UIM coverage by name, one of the definitions of "uninsured motor vehicle" includes a definition consistent with "underinsured motorist vehicle" and therefore all the sections under the UM coverage portion of the policy apply with equal force to UIM coverage.

However, we note that there is another provision under the UM coverage portion of the motorcycle and automobile policies entitled "Other Insurance" which, when construed with the language in the "Limits of Insurance" section, could be determined to create an ambiguity in the insurance contract. The "Other Insurance" provision states:

"5. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all

such policies shall not exceed the limits provided by the single policy with the highest limits of liability."

An almost identical provision appears in the "Conditions" section of the policy. The construction of an insurance policy is a question of law which this court determines *de novo*, with the overriding purpose to ascertain and effectuate the intention of the parties. (*Shefner v. Illinois Farmers Insurance Co.* (1993), 243 Ill. App. 3d 683, 686.) In determining whether a policy is ambiguous, the policy in its entirety must be considered. (*Shefner*, 243 Ill. App. 3d at 686.) If the policy language is unambiguous, the parties' intent should be gleaned from the language of the policy without resort to rules of construction, unless the language offends public policy. (*Shefner*, 243 Ill. App. 3d at 686.) A provision is ambiguous if it can reasonably be read to have more than one meaning, and, in such a case, the ambiguity must be construed in favor of the insured. *Shefner*, 243 Ill. App. 3d at 686.

We examine the provisions of the Nissan policy, attached as an exhibit to plaintiff's complaint, to determine if either of the two automobile policies is "applicable." Although plaintiff was the named insured on two automobile policies with Farmers, one insuring a 1981 Nissan and one insuring a 1985 Honda, the parties agree that the language of the two policies is identical. If the policies are "applicable," then the "Other Insurance" provision allowing plaintiff to elect coverage to the extent of the policy with the highest limits would be inconsistent with the language of the "Limits of Liability" provision, and the ambiguity would have to be resolved in favor of allowing plaintiff to look beyond the coverage afforded in the motorcycle policy.

After carefully reading the automobile policy, we conclude that neither automobile policy is "applicable." While plaintiff is an "insured" for purposes of the UM/UIM coverage of these policies, there is an exclusion of UM/UIM coverage for "bodily injury sustained by a person: 1. While occupying any vehicle owned by you or a family member for which insurance is not afforded under this policy or through being struck by that vehicle." The automobile policies clearly do not afford insurance under "Part I-Liability" because Farmers agrees to pay for damages arising from the use of "private passenger car," which is defined as a "four wheel land motor vehicle," and exclusion 9 of "Part I-Liability" states that the insurance will not cover "bodily injury or property damage arising out of the ownership, maintenance or use of any motorized vehicle with less than four wheels." A similar exclusion appears within "Part III-Medical." Finally, the property damage portion of the policy specially provides for payment for loss to "your insured car," and the

motorcycle plaintiff was driving would not qualify as "your insured car" as that phrase is defined in the policy. Therefore, there would be no UIM coverage available to plaintiff under either of his automobile policies by virtue of the granting language which restricts liability coverage to "private passenger cars" and by virtue of exclusion 9.

Additionally, although we need not rely on it, paragraph 4 of "Other Insurance" states, "[w]e will not provide insurance for a vehicle other than 'your insured car,' unless the owner of that vehicle has no other insurance applicable to this part." Plaintiff has argued that any provision restricting UIM coverage to a particular vehicle is against public policy. However, this court has recently considered and rejected a similar argument. (*Shefner*, 243 Ill. App. 3d at 688.) While in *Shefner* there was coverage under one policy which was in excess of the statutorily required minimum (see 625 ILCS 5/7—203 (West 1992)), here there was coverage afforded under the motorcycle policy in the amount of the statutory minimum and this was sufficient to comply with public policy mandates. The policy behind UM is "to place the policyholder in substantially the same position he would occupy, so far as his being injured or killed is concerned, if the wrongful driver had had the minimum liability insurance required by the [Illinois Vehicle Code]." (*Hettenhausen v. Economy Fire & Casualty Co.* (1987), 154 Ill. App. 3d 488, 492.) The UIM coverage statutory requirement is designed to protect "the insured against the risk of a lesser recovery if injured by an insured driver rather than by an uninsured driver." *Hettenhausen*, 154 Ill. App. 3d at 493.

We recognize that the basis upon which we are affirming was not the basis upon which the trial court relied to dismiss plaintiff's complaint, but we may affirm on any basis shown on the record. *Washington v. Chicago Board of Education* (1990), 204 Ill. App. 3d 1091, 1097.

For the reasons stated above, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

BOWMAN and QUETSCH, JJ., concur.