OPINION OF THE COURT
Alan D. Oshrin, J.
On this CPLR 3212 motion for summary judgment it is ordered and adjudged that the plaintiffs, General Accident Insurance Company of America (General Accident) and GA Insurance Company of New York, have an obligation to indemnify and defend Idbar Realty Corporation, HCS Realty of New York Corp. and MRM 2000 Inc. in the Supreme Court, Bronx County action commenced by Maritza Cantres, on behalf of her infant daughter, Caridad Cantres, and herself.
There are two basic issues before the court. One, whether the lead poisoning suffered by Caridad Cantres and which was first diagnosed in September of 1984 constitutes an occurrence under policies issued by the plaintiffs for annual periods commencing on April 10, 1987 and terminating on April 10, 1991. Second, whether coverage for lead paint poisoning is barred by the pollution exclusion.
By each policy General Accident agreed to pay on behalf of the insured all sums to which the insured became legally obligated to pay as damages because of a bodily injury caused by an occurrence to which the insurance applies. "Bodily injury” is defined to mean bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom. "Occurrence” is defined to mean an accident, including continuous or repeated exposure to conditions, which results in bodily injury neither expected nor intended by the insured. The defendants Cantres have submitted documentary evidence to establish that there were continuing uncorrected peeling lead paint and new peeling lead paint conditions upon the subject premises in *811 May and June of 1989, which is within the period of time that General Accident provided coverage.
The defendants Cantres have also submitted the affirmation of John F. Rosen, M.D., who states that after ingestion the lead enters the bloodstream, that within several weeks of ingestion the lead which has entered the bloodstream is deposited in the child’s bones, soft tissues and organs including the brain; that the more lead that enters the body, the more lead will be stored by the body; that this phenomenon is known as the over-all lead body burden, and that the more lead that enters the child, the more injury will be done by the lead. There being evidence of a continuous or repeated exposure to the lead paint condition into the period of coverage, and there being evidence of the cumulative or exacerbative affect on the human body of continued exposure, by the plain language of the policy there may be an "occurrence” within the coverage period. Inasmuch as the underlying tort complaints permit proof of the facts establishing coverage there is an obligation to defend (see, Continental Cas. Co. v Rapid-American Corp., 177 AD2d 61 [1992], affd 80 NY2d 640 [1993]).
The plaintiff relies upon the Court of Appeals decision in Continental Cas. Co. v Rapid-American Corp. (80 NY2d 640, supra) for the proposition that New York has adopted the injury in fact test for prolonged exposure situations, whereby the event triggering coverage is when the injury, sickness, disease or disability actually began. The plaintiff then argues that Caridad Cantres’ condition, which was first diagnosed in September of 1984, cannot be a basis for coverage under policies of insurance which first became effective on April 10, 1987. For the reasons discussed below, the court cannot agree.
First, the Continental Court was ruling upon what event constitutes bodily injury sufficient to trigger coverage where a latent injury is caused by prolonged exposure to a toxic substance, which in that case was asbestos. There is no evidence before the court that lead paint poisoning is a latent injury, and there is some indication in the record that the injury will begin to manifest itself within a short time after the initial ingestion of lead based paint. Second, reading the opinion of the First Department in conjunction with that of the Court of Appeals which affirmed the intermediate appellate court, by applying the injury in fact test the courts ruled that injury in fact could be found to occur in more than one policy period for the asbestos induced injuries. Third, as noted previously, there is evidence before the court that the more *812 lead that is ingested, the more serious and severe is the detrimental impact upon the human body. There is the possibility, therefore, that Caridad Cantres’ lead paint poisoning induced injuries will have separate and discrete onsets, aggravations, increases in severity, increases in persistence or manifestations of symptomatology, which fall into one or more coverage periods from April 10, 1987 to April 10, 1991 as the result of the continued exposure to the peeling lead paint condition at the subject premises (see generally, United States Liab. Ins. Co. v Farley, Sup Ct, Kings County, June 11, 1993; United States Fid. & Guar. Co. v Munroe, Super Ct, Commonwealth of Mass, Jan. 21, 1993; Eagle-Picher Indus. v Liberty Mut. Ins. Co., 682 F2d 12 [1982], cert denied 460 US 1028 [1983]; Keene Corp. v Insurance Co., 667 F2d 1034 [1981], cert denied 455 US 1007 [1982]).
With respect to the pollution exclusion, the court notes at the outset that before an insurance company is permitted to avoid policy coverage it must satisfy its burden of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation (see, Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d 66 [1989]; Seaboard Sur. Co. v Gillette Co., 64 NY2d 304 [1984]). Additionally, any ambiguities, particularly those found in an exclusionary clause, must be construed against the insurer (see, Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., 60 NY2d 390 [1983]; Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356 [1974]). The pollution exclusion provides in pertinent part that excluded from coverage are "bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants: at or from premises owned, rented or occupied by the named insured”. Pollutants are then defined to mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. The court has reviewed the cases which have explored the pollution exclusion, in general (see, e.g., Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, supra; Karroll v Atomergic Chemetals Corp., 194 AD2d 715 [1993], Iv dismissed 82 NY2d 920 [1994]; Incorporated Vil. of Cedarhurst v Hanover Ins. Co., 160 Misc 2d 795 [1994]) and with respect to lead paint poisoning in particular (see, e.g., Generali-U.S. Branch v Caribe Realty Corp., 160 Misc 2d 1056 [1994]; Oates v State of New York, 157 Misc 2d 618 [1993], appeal withdrawn 206 AD2d 979 [1994]; Atlantic Mut. Ins. Co. v McFadden, 413 *813 Mass 90 [1992]; Kaytes v Imperial Cas. & Indem. Co., US Dist Ct, Jan. 10, 1994) and adopts the analysis as set forth in Generali-U.S. Branch v Caribe Realty Corp. (160 Misc 2d 1056, supra). Inasmuch as an insurer cannot negate coverage unless the exclusion is subject to no other reasonable interpretation (see, Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, supra; Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, supra), and inasmuch as in the case at bar there is a reasonable interpretation of the exclusion other than that it applies to claims based on lead poisoning, that is, that the pollution exclusion clause only applies to claims for injuries based upon industrial environmental pollution, the plaintiff cannot meet its burden as to the applicability of the exclusion and is obligated to indemnify its insureds upon the trial of the underlying action.
Accordingly, General Accident is obligated to both defend and indemnify the insureds in the Cantres action.