(No. 81289.—

AMERICAN STATES INSURANCE CO., Appellant,
v. HARVEY KOLOMS *et al.*, Appellees.

*Opinion filed October 17, 1997.*

474

HEIPLE, J., dissenting.

Richard M. Clark and James P. DeNardo, of McKenna, Storer, Rower, White & Farrug, of Chicago, and Dennis F. Cantrell and James M. Hinshaw, of Bingham, Summers, Welsh & Spilman, of Indianapolis, Indiana, for appellant.

William P. Caputo, of Nilson, Stookal, Gleason & Caputo, of Chicago, for appellees.

Robert C. Johnson and Steven M. Levy, of Sonnenschein, Nath & Rosenthal, of Chicago, and Laura A. Foggan, Marilyn E. Kerst, Neil S. Bromberg and John C. Yang, of Wiley, Rein & Fielding, of Washington, D.C., for *amicus curiae* Insurance Environmental Litigation Association.

Irene C. Warshauer and Tara A. Griffin, of Anderson, Kill & Olick, P.C., of New York, New York, and Howard S. Lindenberg, of McLean, Virginia, for *amicus curiae* Federal Home Loan Mortgage Corp.

James D. Fiffer, of Wildman, Harrold, Allen & Dixon, of Chicago, and Marc S. Meyerson and Kirby T. Griffis, of Spriggs & Hollingsworth, of Washington, D.C., for *amicus curiae* Hart & Cooley, Inc.

Anthony C. Valiulis, Deborah Schmitt Bussert, Penny Brown and Wendy B. Kahn, of Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, P.C., and John H. Mathias, Thomas A. Marrinson and Celiza P. Braganca, of Jenner & Block, all of Chicago, for *amici curiae* Lead Elimination Action Drive *et al.*

JUSTICE McMORROW delivered the opinion of the court:

We granted leave to appeal in this case (155 Ill. 2d R. 315) in order to examine the scope of the absolute pollution exclusion provision contained in a commercial general liability (CGL) policy. The dispositive issue for our review is whether that exclusion bars coverage for claims of carbon monoxide poisoning caused by an allegedly defective furnace. For the reasons that follow, we hold it does not.

### Background

The facts of this case, as taken from the pleadings, are relatively straightforward. On September 17, 1990, a furnace in a two-story commercial building located in Lincolnshire, Illinois, began to emit carbon monoxide and other noxious fumes. Several employees of one of the building's tenants, Sales Consultants, Inc., inhaled the fumes and became ill. Six of those employees eventually filed suit against the beneficial owners of the property, Harvey and Nina Koloms (hereinafter referred to as Koloms). In the complaints, the employees alleged that Koloms had negligently maintained the furnace and had failed to keep it in good working condition. They also claimed that Koloms had not properly inspected some repair work which had been performed on the furnace. Each employee sought damages as compensation for his or her injuries.

Koloms, in turn, tendered the complaints to American States Insurance Company (ASI), which had insured the building under a standard-form CGL policy. After reviewing the complaints, ASI agreed to defend Koloms subject to a reservation of rights. Specifically, ASI reserved the right to contest coverage on the basis of the absolute pollution exclusion contained in the policy. That exclusion provided in pertinent part:

"This insurance does not apply to:

* * *

f.(1) 'Bodily injury' or 'property damage' arising out of actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) At or from premises you own, rent or occupy ***."

The exclusion further defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

Shortly thereafter, ASI instituted the present action in the circuit court of Cook County, seeking a declaration that it did not have a duty to defend or indemnify Koloms. The gravamen of ASI's complaint centered upon the meaning of the term "pollutants." ASI alleged that the term was unambiguous and that, in accordance with its plain meaning, the emission of carbon monoxide fumes constituted the "release" of a gaseous "irritant or contaminant." ASI insisted, therefore, that any bodily injuries resulting from such emissions were excluded from coverage.

In response, Koloms denied the material allegations of the complaint and filed two separate affirmative defenses. In one of the affirmative defenses, Koloms alleged that the pollution exclusion did not apply to injuries caused by a leaking furnace, but rather was limited to injuries resulting from industrial, commercial or large scale pollution. They claimed that the CGL policy exclusion was ambiguous to that extent, and that an insured person in their position would not reasonably expect carbon monoxide, a commonly occurring chemical compound, to be considered a pollutant.[1]

---

[1]In their second affirmative defense, which is not relevant to the disposition of this appeal, Koloms asserted that ASI was estopped from denying coverage on the basis of certain representations made by Richard McClure, a purported sales agent acting on behalf of ASI. According to Koloms, McClure had informed

After taking discovery, both parties filed cross-motions for summary judgment, reiterating the contentions raised in the earlier pleadings. The circuit court, ruling in favor of Koloms, found that the "malfunctioning heater clearly was not intended by the Koloms as owners of commercial real estate, to be excluded by the provision." The circuit court granted Koloms' motion for summary judgment, finding both a duty to defend and a duty to indemnify. The circuit court also denied ASI's cross-motion for summary judgment, and ASI appealed.

The appellate court, like the circuit court, concluded that the policy language should be construed in favor of coverage. 281 Ill. App. 3d 725 (1996). In reaching this conclusion, the court noted that:

> "[a]fter consideration of the language of the clause, the wide scope of risks insured by [ASI] in the policy, the nature of the building and the reasoning of other courts that have interpreted this very clause, we too find that the clause is ambiguous, as it can reasonably be interpreted as applying only to environmental pollution." 281 Ill. App. 3d at 731.

Accordingly, the appellate court upheld the circuit court's finding of a duty to defend. The court further noted, however, that any determination of ASI's duty to indemnify should not be made until there has been an actual finding of liability against Koloms in the underlying actions. Because those actions remained pending, the appellate court reversed, as premature, the circuit court's finding of a duty to indemnify.

The matter is currently before this court on ASI's petition for leave to appeal. 155 Ill. 2d R. 315. During the pendency of this case, we granted the Insurance Environmental Litigation Association leave to file an *amicus curiae* brief on behalf of ASI. We also allowed the following parties leave to file *amici curiae* briefs on behalf of Koloms: the Federal Home Loan Mortgage

---

them that they would be covered for all commercial risks associated with the property in question.

Corporation; Hart & Cooley, Inc.; the Lead Elimination Action Drive; the Institute of Real Estate Management; and Katalina Stringfield. Having carefully considered all of the briefs, we now affirm the judgment of the appellate court.

## Analysis

We begin our analysis in this case by discussing the standards by which a court determines whether an insurer is obligated to defend its insured. Ordinarily, a court looks to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). If the facts alleged in the complaint fall within, or potentially within, the language of the policy, the insurer's duty to defend arises. *Outboard Marine*, 154 Ill. 2d at 108. A court's primary objective in construing the language of the policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning. *Outboard Marine*, 154 Ill. 2d at 108. Conversely, if the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. *Outboard Marine*, 154 Ill. 2d at 108-09. In addition, provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer. *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116, 122 (1994). A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Crum & Forster*, 156 Ill. 2d at 391. Finally, the construc-

tion of an insurance policy is a question of law subject to *de novo* review. *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 720 (1995); *Shefner v. Illinois Farmers Insurance Co.*, 243 Ill. App. 3d 683, 686 (1993).

As the foregoing principles demonstrate, our determination of whether the pollution exclusion applies to the types of injuries at issue in this case turns primarily upon the language of the exclusion itself. ASI contends, as it did in the lower courts, that the language is unambiguous and must be given its plain and ordinary meaning. In support of this contention, ASI points out that the exclusion specifically applies to injuries arising out of the "release or escape of pollutants." ASI further notes that the exclusion defines "pollutants" as any "gaseous *** irritant or contaminant, including *** fumes." According to ASI, all of these words have commonly understood meanings and usages which render the provision free of doubt. ASI adds that, given the absence of any ambiguity, it "strains all credibility" to suggest that carbon monoxide fumes emitted from an allegedly defective furnace fall outside the scope of the exclusion. This is particularly true, ASI stresses, since carbon monoxide is not only defined in common dictionaries as a "colorless odorless very toxic gas" (Webster's Third New International Dictionary 336 (1981)), but it is also regulated by the federal government as a "pollutant." See 40 C.F.R. Part 50 (1996) (establishing carbon monoxide as a "criteria air pollutant" endangering public health under the Clean Air Act (42 U.S.C. § 7408(a)(1) (1994))).

In addition to the above arguments, ASI also relies upon several cases from other jurisdictions which have, under similar circumstances, enforced the policy exclusion as written. For example, in *Bernhardt v. Hartford Fire Insurance Co.*, 102 Md. App. 45, 648 A.2d 1047

(1994), *cert. allowed*, 337 Md. 641, 655 A.2d 400 (1995), a chimney flue in a residential apartment complex became obstructed with debris, which then resulted in an excessive accumulation of carbon monoxide gas. As in the instant case, several of the building's tenants became ill. One of the tenants brought suit against the owner of the property, claiming that the furnace had been improperly maintained. The building's owner, like Koloms, tendered the complaint to his insurer, but was denied coverage on the basis of the pollution exclusion. A trial court in a subsequent declaratory action found that the exclusion was clear and unambiguous, and held that the exclusion applied. *Bernhardt*, 102 Md. App. at 48, 648 A.2d at 1048. The insured appealed.

In affirming the decision of the trial court, the Maryland Court of Special Appeals observed that an insurance policy can be viewed as ambiguous in one of two ways. First, the language itself " 'may be intrinsically unclear, in the sense that a person reading it without the benefit of some extrinsic knowledge simply [could] not determine what it means.' " *Bernhardt*, 102 Md. App. at 54, 648 A.2d at 1051, quoting *Town & Country Management Corp. v. Comcast Cablevision*, 70 Md. App. 272, 280, 520 A.2d 1129, 1132 (1987). Second, the language, although clear on its face, may become uncertain when applied to a particular object or circumstance. *Bernhardt*, 102 Md. App. at 55, 648 A.2d at 1051. As to this latter type of ambiguity, the court noted that it is well settled " '[t]hat a term may be free from ambiguity when used in one context but of doubtful application in another context.' " *Bernhardt*, 102 Md. App. at 55, 648 A.2d at 1051, quoting *Tucker v. Fireman's Fund Insurance Co.*, 308 Md. 69, 74, 517 A.2d 730, 732 (1986). After reviewing the language of the exclusion, the court of appeals determined that neither type of ambiguity was present. The court explained that, although the title

"pollution exclusion" could, standing alone, be viewed as ambiguous, the actual language contained in the exclusion was "quite specific." *Bernhardt*, 102 Md. App. at 54, 648 A.2d at 1051. The court also found that "a person of ordinary intelligence reading the language" would conclude that the exclusion applied to carbon monoxide poisoning. *Bernhardt*, 102 Md. App. at 54, 648 A.2d at 1051.

Equally important, the *Bernhardt* court also rejected the insured's contention that, "notwithstanding the literal language of the exclusion, the parties intended that [the exclusion] apply only to persistent industrial pollution of the environment, and not to an accident of the kind generally covered by a comprehensive business liability policy." *Bernhardt*, 102 Md. App. at 48-49, 648 A.2d at 1049. As ASI notes, this argument is virtually identical to the argument relied upon by our appellate court when it determined that the exclusion did not apply. See 281 Ill. App. 3d at 731 ("we too find that the clause is ambiguous, as it can reasonably be interpreted as applying only to environmental pollution"). ASI argues that our appellate court erred in this regard, and instead should have adopted the reasoning of the *Bernhardt* court. The court there stated in pertinent part:

> "Quite apart from the problems inherent in determining what may or may not be 'industry-related,' we are required to state the obvious—nowhere in this exclusion does the word 'industry' or 'industrial' appear. There is simply no such limitation. Moreover, we would be hard pressed to conclude that the insurance industry intended such a limitation in an exclusion it intentionally included as an endorsement in policies covering non-industrial business, and indeed, even in homeowner's policies." *Bernhardt*, 102 Md. App. at 55, 648 A.2d at 1051.

The *Bernhardt* court then rejected the insured's related argument that the pollution exclusion be limited only to active polluters, *i.e.*, those individuals who knowingly emit pollutants over an extended period of time.

The court explained that the exclusion neither draws a distinction between an intentional and nonintentional discharge of pollutants nor suggests that "only chronic emission of the defined pollutants is excluded from coverage." *Bernhardt*, 102 Md. App. at 55, 648 A.2d at 1052. As such, the exclusion could be applied to the owner of a residential apartment complex, notwithstanding the fact that the owner may not have been an active polluter of the environment. *Bernhardt*, 102 Md. App. at 56, 648 A.2d at 1052. For these reasons, the *Bernhardt* court upheld the lower court's finding of no coverage. *Bernhardt*, 102 Md. App. at 56, 648 A.2d at 1052. See also *Essex Insurance Co. v. Tri-Town Corp.*, 863 F. Supp. 38 (D. Mass. 1994) (finding that carbon monoxide emissions from an ice resurfacing machine at a hockey game fell within the scope of the exclusion); *League of Minnesota Cities Insurance Trust v. City of Coon Rapids*, 446 N.W.2d 419 (Minn. App. 1989) (same).

Based upon the above analysis, ASI urges this court to follow *Bernhardt* and other similar cases and hold that the pollution exclusion is neither ambiguous nor limited to incidents of industrial pollution.

Koloms, on the other hand, do not dispute that the drafters of the policy employed commonly understood words when they sought to remove pollution related injuries from the scope of coverage. Rather, they maintain that, regardless of its facial clarity, the exclusion does not apply to "damages due to routine commercial hazards such as a faulty heating and ventilation system." Koloms base their conclusion, in part, upon their view of the historical purpose of the exclusion, which they believe supports limiting the clause to large scale, environmental contamination. Specifically, Koloms assert that both the original pollution exclusion, first instituted in the early part of the 1970s, and the current pollution exclusion, drafted in 1985, were

intended solely to protect insurers from having to defend and indemnify insureds in connection with governmental clean-up costs. Koloms insist, therefore, that because this case involves personal injuries caused by exposure to materials which do not constitute "pollution" in the traditional sense of the word, the exclusion does not apply.

Koloms further add that, if this court were to adopt ASI's interpretation, we would not only be extending the exclusion far beyond its historical purpose, but we would also be nullifying most of the coverage currently afforded under the standard-form CGL policy. Koloms direct our attention to several recent opinions in which courts have criticized the insurance industry's broad definition of the terms "irritant" and "contaminant." For example, in *Westchester Fire Insurance Co. v. City of Pittsburgh*, 768 F. Supp. 1463, 1470 (D. Kan. 1991), *aff'd*, 987 F.2d 1516 (10th Cir. 1993), a federal district court objected to the exclusion's potentially limitless reach, noting that "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." In a similar vein, the Seventh Circuit Court of Appeals observed:

> "Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution." *Pipefitters Welfare Education Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992).

Koloms submit that, in the absence of some judicially imposed parameters, the terms "irritants" and "con-

taminants" could even be applied to such everyday elements as water or air. For this reason, they urge that the exclusion must be limited, in accordance with its historical purpose, to incidents of environmental pollution.

As is evident from the foregoing discussion, the parties have presented this court with compelling reasons which support their respective positions. Indeed, the strength of their arguments is perhaps best reflected in the vast divergence of the jurisprudence from courts across the country which have already struggled with the question now facing this court. Unfortunately, despite the abundance of opinions construing the exclusion, courts have not reached a clear consensus as to its proper interpretation. This is true even within the fairly rare context of carbon monoxide poisoning. Some courts have construed the provision in favor of the insured, holding that the exclusion is vague and ambiguous. See, *e.g.*, *Motorists Mutual Insurance Co. v. RSJ, Inc.*, 926 S.W.2d 679 (Ky. App. 1996); *Gamble Farm Inn v. Selective Insurance Co.*, 440 Pa. Super. 501, 656 A.2d 142 (1995); *Kenyon v. Security Insurance Co.*, 163 Misc. 2d 991, 626 N.Y.S.2d 347 (1993). Other courts, however, have denied coverage on the grounds that the exclusion is plain and unambiguous. See, *e.g.*, *Reliance Insurance Co. v. Moessner*, _____ F.3d _____, No. 95—1899 (3d Cir. August 5, 1997); *Bernhardt v. Hartford Fire Insurance Co.*, 102 Md. App. 35, 648 A.2d 1047 (1994), *cert. allowed*, 337 Md. 641, 655 A.2d 400 (1995); *League of Minnesota Cities Insurance Trust v. City of Coon Rapids*, 446 N.W.2d 419 (Minn. App. 1989). Still other courts have largely ignored the language of the exclusion and have found coverage on the basis of the reasonable expectations of the insured.[2] See, *e.g.*, *Regional Bank v. St. Paul Fire & Marine Insurance Co.*, 35 F.3d 494 (10th Cir. 1994).

---

[2]This doctrine provides that the " 'objectively reasonable

Meanwhile, courts have also considered the exclusion in the context of other types of "pollutants."[3] They too,

---

expectation of all applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.' " *Insurance Co. of North America v. Adkisson*, 121 Ill. App. 3d 224, 228 (1984), quoting R. Keeton, Basic Text on Insurance Law § 6.3, at 351 (1971).

[3]By way of example, courts have been called upon to decide whether the exclusion applies to fumes emitted from cleaning compounds (*Island Associates, Inc. v. Eric Group, Inc.*, 894 F. Supp. 200 (W.D. Pa. 1995)), photographic chemicals (*Center for Creative Studies v. Aetna Life & Casualty Co.*, 871 F. Supp. 941 (E.D. Mich. 1994)), flooring sealants (*West American Insurance Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. 312, 409 S.E.2d 692 (1991); *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 451 Pa. Super. 136, 678 A.2d 802 (1996), *appeal granted in part*, 547 Pa. 384, 690 A.2d 711 (1997)), and toxic cements (*Lumbermens Mutual Casualty Co. v. S-W Industries, Inc.*, 39 F.3d 1324 (6th Cir. 1994)). Courts have likewise considered the exclusion in connection with friable asbestos (*Essex Insurance Co. v. Avondale Mills, Inc.*, 639 So. 2d 1339 (Ala. 1994); *American States Insurance Co. v. Zippro Construction Co.*, 216 Ga. App. 499, 455 S.E.2d 133 (1995)); sulfuric acid (*Karrol v. Atomergic Chemetals Corp.*, 194 A.D.2d 715, 600 N.Y.S.2d 101 (1993)); polychlorinated biphenyls (PCBs) (*Pipefitters Welfare Education Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037 (7th Cir. 1992)); insecticides (*Westchester Fire Insurance Co. v. City of Pittsburgh*, 768 F. Supp. 1463 (D. Kan. 1991), *aff'd*, 987 F.2d 1516 (10th Cir. 1993)); hydrofluoric acid (*National Union Fire Insurance Co. v. CBI Industries*, 907 S.W.2d 517 (Tex. 1995)); and, most notably, lead paint (*Sullins v. Allstate Insurance Co.*, 340 Md. 503, 667 A.2d 617 (1995); *Weaver v. Royal Insurance Co. of America*, 140 N.H. 780, 674 A.2d 975 (1996); *Lefrak Organization, Inc. v. Chubb Custom Insurance Co.*, 942 F. Supp. 949 (S.D.N.Y 1996); *Generali-U.S. Branch v. Caribe Realty Corp.*, 160 Misc. 2d 1056, 612 N.Y.S.2d 296 (N.Y. Sup. Ct. 1994); *General Accident Insurance Co. of America v. Idbar Realty Corp.*, 163 Misc. 2d 809, 622 N.Y.S.2d 417 (N.Y. Sup. Ct. 1994); *United States Liability Insurance Co. v. Bourbeau*, 49 F.3d 786 (1st Cir. 1995)).

have failed to achieve a consistent interpretation of the clause.

The source of the disagreement within the jurisprudence seems to lie in the fact that the language of the clause is, as the *Bernhardt* court observed, "quite specific" on its face, and yet a literal interpretation of that language results in an application of the clause which is "quite broad." We note that when the definition of the term "pollutant" is inserted into the body of the exclusion, the clause eliminates coverage for " '[b]odily injury' or 'property damage' arising out of actual, alleged or threatened discharge, dispersal, release or escape of *** any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." A close examination of this language reveals that the exclusion (i) identifies the types of injury-producing materials which constitute a pollutant, *i.e.*, smoke, vapor, soot, *etc.*, (ii) sets forth the physical or elemental states in which the materials may be said to exist, *i.e.*, solid, liquid, gaseous or thermal, and (iii) specifies the various means by which the materials can be disseminated, *i.e.*, discharge, dispersal, release or escape. To that extent, therefore, the exclusion is indeed "quite specific," and those courts wishing to focus exclusively on the bare language of the exclusion will have no difficulty in concluding that it is also unambiguous. See, e.g., *Reliance Insurance Co. v. Moessner*, _____ F.3d _____, No. 95—1899 (3d Cir. August 5, 1997).

Not all courts, however, find the bare language of the exclusion dispositive. A number of courts, while acknowledging the lack of any facial ambiguity, have nevertheless questioned whether the breadth of the language renders application of the exclusion uncertain, if not absurd. For instance, in addition to the cases discussed above, the Ohio Court of Appeals has observed

that "the extremely broad language of the 1987 exclusion, in conjunction with the definition of a pollutant, raises an issue as to whether the exclusion is so general as to be meaningless." *Ekleberry, Inc. v. Motorists Mutual Insurance Co.*, No. 3—91—39, 1992 Ohio App. Lexis 3778 at 7 (July 17, 1992); see also *American States Insurance Co. v. Kiger*, 662 N.E.2d 945, 948 (Ind. 1996) ("Clearly, this clause cannot be read literally as it would negate virtually all coverage"); *Sullins v. Allstate Insurance Co.*, 340 Md. 503, 667 A.2d 617 (1995) (same); *Motorists Mutual Insurance Co. v. RSJ, Inc.*, 926 S.W.2d 679 (Ky. App. 1996) (same). These courts, troubled by the results which obtain when the terms of the clause are applied in the context of an actual claim, often decline to apply the pollution exclusion to injuries other than those caused by traditional environmental contamination. See, *e.g.*, *Weaver v. Royal Insurance Co. of America*, 104 N.H. 780, 783, 674 A.2d 975, 977 (1996) ("While courts freely apply the pollution exclusion to environmental contamination, they are generally unwilling to hold that its scope reaches other pollution-related injuries").

We have carefully reviewed all of the foregoing decisions as well as each of the contentions raised by the parties. Notwithstanding ASI's arguments to the contrary, we believe that a purely literal interpretation of the disputed language, without regard to the facts alleged in the underlying complaints, fails to adequately resolve the issue presented to this court. Like many courts, we are troubled by what we perceive to be an overbreadth in the language of the exclusion as well as the manifestation of an ambiguity which results when the exclusion is applied to cases which have nothing to do with "pollution" in the conventional, or ordinary, sense of the word. See, *e.g.*, *Minerva Enterprises, Inc. v. Bituminous Casualty Corp.*, 312 Ark. 128, 851 S.W.2d

403 (1993). Accordingly, we agree with those courts which have restricted the exclusion's otherwise potentially limitless application to only those hazards traditionally associated with environmental pollution. We find support for our decision in the drafting history of the exclusion, which reveals an intent on the part of the insurance industry to so limit the clause.

The events leading up to the insurance industry's adoption of the pollution exclusion are "well-documented and relatively uncontroverted." *Morton International, Inc. v. General Accident Insurance Co.*, 134 N.J. 1, 31, 629 A.2d 831, 848 (1993). Prior to 1966, the standard-form CGL policy provided coverage for bodily injury or property damage caused by an "accident." *Center for Creative Studies v. Aetna Life & Casualty Co.*, 871 F. Supp. 941, 943 n.3 (E.D. Mich. 1994), quoting J. Stempel, *Interpretation of Insurance Contracts: Law and Strategy for Insurers and Policyholders* 825 (1994). The term "accident," however, was not defined in the policy. As a result, courts throughout the country were called upon to define the term, which they often interpreted in a way as to encompass pollution-related injuries. In response, the insurance industry revised the CGL policy in 1966 and changed the former "accident"-based policy to an "occurrence"-based policy. The new policy specifically defined an "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury and property damage that was neither expected nor intended from the standpoint of the insured." *Morton International, Inc.*, 134 N.J. at 32, 629 A.2d at 849 (and cases cited therein). Despite these changes, courts continued to construe the policy to cover damages resulting from long-term, gradual exposure to environmental pollution. As one court observed, "[s]o long as the ultimate loss was neither expected nor intended, courts generally extended cover-

age to all pollution-related damage, even if it arose from the intentional discharge of pollutants." *New Castle County v. Hartford Accident & Indemnity Co.*, 933 F.2d 1162, 1196-97 (3d Cir. 1991).

Meanwhile, at about the same time, the United States Congress substantially amended the Clean Air Act in an effort to protect and enhance the quality of the nation's air resources. Pub. L. No. 91—604, 84 Stat. 1676 (1970) (now codified at 42 U.S.C. §§ 7401 through 7642 (1983), as amended). The passage of these amendments, which included provisions for cleaning up the environment, imposed greater economic burdens on insurance underwriters, particularly those drafting standard-form CGL policies. *Westchester Fire Insurance Co. v. City of Pittsburgh*, 768 F. Supp. 1463, 1469 n.8 (D. Kan. 1991), *aff'd*, 987 F.2d 1516 (10th Cir. 1993). The insurer's burdens further increased with the relatively recent, and now well-publicized, environmental disasters of Times Beach, Love Canal and Torrey Canyon. See *Center for Creative Studies*, 871 F. Supp. at 944; see also *Morton International, Inc.*, 134 N.J. at 33-34, 629 A.2d at 850.

In the wake of these events, the insurance industry became increasingly concerned that the 1966 occurrence-based policies were "tailor-made" to cover most pollution-related injuries. *Morton International, Inc.*, 134 N.J. at 33, 629 A.2d at 850, quoting Note, *The Pollution Exclusion Clause Through the Looking Glass*, 74 Geo. L.J. 1237, 1251 (1986). To that end, changes were suggested, and the industry proceeded to draft what was to eventually become the pollution exclusion. The Supreme Court of New Jersey explained, "[f]oreseeing an impending increase in claims for environmentally-related losses, and cognizant of the broadened coverage for pollution damage provided by the occurrence-based, CGL policy, the insurance industry drafting organiza-

tions began in 1970 the process of drafting and securing regulatory approval for the standard pollution-exclusion clause." *Morton International, Inc.*, 134 N.J. at 32, 629 A.2d at 849-50. Consequently, the General Liability Governing Committee of the Insurance Rating Board ·instructed its drafting committee "to consider the question and determine the propriety of an exclusion, having in mind that pollutant-caused injuries were envisioned to some extent in the adoption of the current [policies]." *Morton International, Inc.*, 134 N.J. at 34, 629 A.2d at 850, quoting T. Reiter, D. Strasser & W. Pohlman, *The Pollution Exclusion Under Ohio Law: Staying the Course*, 59 U. Cin. L. Rev. 1165, 1197 (1991).

The result of these· efforts was the addition of an endorsement to the standard-form CGL policy in 1970. The endorsement provided in pertinent part:

> "[This policy shall not apply to bodily injury or property damage] arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

Three years later, in 1973, the insurance industry incorporated the above endorsement directly into the body of the policy as exclusion "f."[4]

During the next 13 years, various courts labored over the exact meaning of the words "sudden and accidental." Much of the litigation focused on whether the word "sudden" was intended to be given a strictly temporal meaning such that, in order for the exception

---

[4]We note, parenthetically, that the definition of the term "occurrence" was also modified in that same year, and is now defined as "an accident, including continuous and repeated exposures to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

to apply, the discharge of pollution had to have been "abrupt." See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90 (1992). This controversy generated an enormous amount of litigation, leading one commentator to describe the dispute as one of "the most hotly litigated insurance coverage questions of the late 1980's." J. Stempel, *Interpretation of Insurance Contracts: Law and Strategy for Insurers and Policyholders* 825 (1994), quoted in *Center for Creative Studies*, 871 F. Supp. at 943. Not surprisingly, insurance companies responded by drafting a new version of the exclusion, which, first appearing in 1985, is now commonly known as the "absolute pollution exclusion." We note that it is this version, the pertinent terms of which have been set forth at the outset of this opinion, that is the subject of the dispute between ASI and Koloms. The two most notable features of this latest version are (i) the lack of any exception for the "sudden and accidental" release of pollution, and (ii) the elimination of the requirement that the pollution be discharged "into or upon land, the atmosphere or any watercourse or body of water." See *Weaver v. Royal Insurance Co. of America*, 140 N.H. 780, 674 A.2d 975 (1996). Significantly, the purpose of the current exclusion, like its predecessor, is "to exclude governmental clean up costs from [the scope of] coverage." *West American Insurance Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. 312, 324, 409 S.E.2d 692, 699 (1991).

Our review of the history of the pollution exclusion amply demonstrates that the predominate motivation in drafting an exclusion for pollution-related injuries was the avoidance of the "enormous expense and exposure resulting from the 'explosion' of *environmental* litigation." (Emphasis added.) *Weaver*, 140 N.H. at 783, 674 A.2d at 977, quoting *Vantage Development Corp. v. American Environmental Technologies Corp.*, 251 N.J.

Super. 516, 525, 598 A.2d 948, 953 (1991). Similarly, the 1986 amendment to the exclusion was wrought, not to broaden the provision's scope beyond its original purpose of excluding coverage for environmental pollution, but rather to remove the "sudden and accidental" exception to coverage which, as noted above, resulted in a costly onslaught of litigation. We would be remiss, therefore, if we were to simply look to the bare words of the exclusion, ignore its *raison d' être*, and apply it to situations which do not remotely resemble traditional environmental contamination. The pollution exclusion has been, and should continue to be, the appropriate means of avoiding " 'the yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances *into the environment.*' " (Emphasis in original.) *Tufco*, 104 N.C. App. at 323, 409 S.E.2d at 699, quoting *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, 315 N.C. 688, 698, 340 S.E.2d 374, 381 (1986). We think it improper to extend the exclusion beyond that arena.

Notwithstanding the above, ASI submits that the deletion of the requirement that the pollution be "[discharged] into or upon land, the atmosphere, or any watercourse or body of water" should be viewed by this court as a clear signal of the industry's intent to broaden the exclusion beyond traditional environmental contamination. We disagree. This same argument was rejected in *West American Insurance Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. 312, 409 S.E.2d 692 (1991), a case which involved the application of the pollution exclusion to damages caused by the release of fumes from a flooring sealant. In *Tufco*, the court noted that, even after its amendment in 1986, the absolute pollution exclusion continued to employ terms of art which bespeak of environmental contamination. The court reasoned:

"Because the operative policy terms 'discharge,' 'dispersal,' 'release,' and 'escape' are environmental terms

of art, the omission of the language 'into or upon land, the atmosphere or any watercourse or body of water' in the new pollution exclusion is insignificant. The omission of the phrase only removes a redundancy in the language of the exclusion that was present in the earlier pollution exclusion clause. Consequently, we find that any 'discharge, dispersal, release, or escape' of a pollutant must be into the environment in order to trigger the pollution exclusion clause and deny coverage to the insured." *Tufco*, 104 N.C. App. at 325, 409 S.E.2d at 700.

See also *Center for Creative Studies*, 871 F. Supp. at 946 ("the fact that the [former version] contained language relating to discharge 'into or upon land, the atmosphere . . .' is not significant"). We agree with this analysis. In our view, the deletion of the aforementioned language does not portend an expansion of the pollution exclusion beyond the context of traditional environmental contamination.

## Conclusion

Given the historical background of the absolute pollution exclusion and the drafters' continued use of environmental terms of art, we hold that the exclusion applies only to those injuries caused by traditional environmental pollution. The accidental release of carbon monoxide in this case, due to a broken furnace, does not constitute the type of environmental pollution contemplated by the clause. Accordingly, the judgment of the appellate court is affirmed.

*Appellate court judgment affirmed.*

JUSTICE HEIPLE, dissenting:

This case turns on the interpretation of an exclusion clause in a policy of insurance. The facts are simple. Plaintiffs alleged injury from carbon monoxide fumes escaping from a malfunctioning furnace. The insurance company denied coverage on the basis of policy language which excluded coverage for injury from the escape of

pollutants. The language further defined pollutants as any gaseous irritant or contaminant including fumes.

Choosing to override the clear language of the insurance contract, however, the majority purports to divine the unstated intent of the parties. With this analysis, coverage is found to be provided. What we have here is not a case of contract construction. It is, rather, a case of contract reconstruction. As such, it is thimblerigging pure and simple. It also indicates the depths to which a court will go to achieve a desired result. If any principle can be derived from this ruling, it is that words have no meaning.

Accordingly, I respectfully dissent.