Cincinnati Specialty Underwriters Ins. Co. v. Energy Wise Homes, Inc. et. al., No. 339-9-12 Bncv (Wesley, J., Jan. 28, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT**<br>**Bennington Unit** | **CIVIL DIVISION**<br>**Docket No. 339-9-12 Bncv** |

| | |
|---|---|
| **Cincinnati Specialty Underwriters**<br>**Insurance Company,**<br>**Plaintiff.**<br><br>**v.**<br><br>**Energy Wise Homes, Inc., Shirley A.**<br>**Uhler, and, Michael D. Uhler,**<br>**Defendants.** | |

### Opinion and Order
### Denying Defendant's Motion for Summary Judgment

Background

Plaintiff brings a declaratory judgment action against Defendants seeking a determination of the scope of coverage as to the commercial general liability policy it sold to Energy Wise. Energy Wise is a company that insulates buildings. In November or October of 2010, Energy Wise contracted to install spray insulation at the Shrewsbury Mountain School. Shirley Uhler was an employee of the Shrewsbury Mountain School when the spraying occurred. Ms. Uhler alleges she suffered respiratory problems due to exposure to toxic airborne chemicals released as a result of the spraying. Together with her husband, Michael, who seeks damages for loss of consortium, Ms. Uhler brought suit against Energy Wise in Rutland County seeking personal injury damages, *Uhler v. Energy Wise Homes, Inc.*, Doc. No. 295-4-12 Rdcv.

As Energy Wise's insurer, while reserving any rights later determined to limit the scope of its policy, Plaintiff agreed to defend Energy Wise in the Rutland case. On September 21, 2012, Plaintiff filed its complaint in this action against Energy Wise and the Uhlers, seeking a declaration that Plaintiff's insurance contract with Energy Wise precludes coverage for this claim.[1]

On September 23, 2013, Plaintiff moved for summary judgment. Plaintiff argues it is not obligated to defend or indemnify Energy Wise on the Uhler's claim relying on the total pollution exclusion in the policy. The contract does not cover "'bodily injury'… which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The policy further defines "pollutants":

---

[1] The record indicates another insurance company, Poulos Insurance, was a third-party defendant but Energy Wise dismissed its claim against Poulos.

'Pollutants' include but are not limited to, that which has been recognized in industry or government to be harmful or toxic to persons, property or environment, regardless of whether the injury damage, or contamination is caused directly or indirectly by the 'pollutants' and regardless of whether (a) The insured is regularly or otherwise engaged in activities which taint and degrade the environment; or (b) The insured uses, generates or produces the 'pollutant.'

The policy also lists pollutants that are specifically excluded, which are: respirable dust, microorganisms, fungi, bacteria, sulfuric acid, tainted drywall, chromated copper aresante, fluorine, beryllium, benzene, formaldehyde, and manganese. The Uhlers' complaint does not specifically identify the toxic airborne substance allegedly responsible for the injury, but the Uhlers' expert will testify it was most likely tertiary amine catalysts.

The Uhlers opposed the motion for summary judgment on November 22, 2013. They argue the pollution exclusion is only intended to protect the insurance company from liability for traditional environmental hazards, and that Plaintiff's interpretation to exclude coverage under the circumstances presented here is so overbroad as to make the policy meaningless. Plaintiff responded to the opposition on December 20, 2013. Energy Wise did not filed a response to the motion for summary judgment.

Standard of Review

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The Court makes all reasonable inferences and resolves all doubts in favor of the non-moving party. *Lamay v. State*, 2012 VT 49, ¶ 6, 191 Vt. 635. When interpreting an insurance policy, the Court seeks to implement the plain meaning of an insurance contract. *Vt. Mut. Ins. Co. v. Parsons Hill P'ship*, 2010 VT 44, ¶ 21, 188 Vt. 80. Where an ambiguity exists, the Court construes the policy in favor of the reasonable expectations of the insured. *Id.* Further, it is the burden of the insurer to show an exclusion applies. *State v. CNA Ins. Cos.*, 172 Vt. 318, 330 (2001).

Discussion

Pollution exclusion contracts have been upheld in Vermont and the parties do not dispute enforceability.[2] However, the scope of the total pollution exclusion has not been well defined in Vermont. *See, e.g.*, Parsons *Hill*, 2010 VT 44, ¶¶ 1–2 (discussing coverage for a breach of the implied warrant of habitability); *Sperling v. Allstate Indem. Co.*, 2007 VT 126, ¶¶ 1–2, 182 Vt.

---

[2] Vermont case law requiring prior regulatory approval of pollution exclusions does not apply. Plaintiff sold Energy Wise a surplus policy and the parties do not argue surplus policies must go through the regulatory approval requirements. *See, e.g.*, *State v. Onebeacon Am. Ins. Co.*, 485-7-07 Wncv, 2009 WL 6557344 (Vt. Super. Ct. Nov. 5, 2009) (Crawford, J.) (holding pollution exclusion enforceable); *State v. Stonington Ins. Co.*, 811-12-02 Wncv, 2007 WL 3234763 (Vt. Super. Ct. July 27, 2007) (Teachout, J.) (discussing requirements for regulatory approval of pollution exclusions); *see also Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 80 (2d Cir. 1999) (holding pollution exclusions do not violate Vermont public policy).

521 (discussing coverage on a home owner's policy for a home heating fuel spill). In *Parsons Hill*, a landlord's insurer sought a declaration that the pollution exclusion on their general comprehensive liability policy precluded coverage. 2010 VT 44, ¶¶ 1–2. The tenants sued the landlord for a breach of an implied warranty of habitability because their water contained a toxin. *Id.* The landlord had three types of coverage. *Id.* ¶ 4. Coverage A covered bodily injury but contained a pollution exclusion; Coverage B covered personal injury without a pollution exclusion; and, Coverage D was for bodily injury caused by pollution. *Id.* The Court ruled none of the policies covered the type of claim made by tenants against landlord because they only covered property damage and personal injury, which are separate from a breach of the implied warrant of habitability. *Id.* ¶ 1, 15, 21–23.

Because Vermont cases do not define the scope of the pollution exclusion in this contract, the Court looks for guidance from other jurisdictions. Two cases, from California and Washington, help to frame the debate. *See MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205 (Cal. 2003); *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733 (Wash. 2005). California holds the pollution exclusion is limited to typical environmental pollution. *See MacKinnon*, 73 P.3d at 1216. In contrast, Washington holds the total pollution exclusion, by its plain language, excludes all injuries that occur from pollutants. *See Quadrant*, 110 P.3d at 744. There are many other cases, but these two cases frame each argument well. There is also discussion in the secondary literature. *See, e.g.*, *Absolute Pollution Exclusion*, 43 Am. Jur. 2d Insurance § 708; *What Constitutes "Pollutant," "Contaminant," "Irritant," or "Waste" Within Meaning of Absolute or Total Pollution Exclusion in Liability Insurance Policy*, 98 A.L.R.5th 193; *Generally; Total Pollution Exclusions*, 9 Couch on Ins. § 127:13.

*MacKinnon* concerned a suit against a landlord for failure to properly apply pesticides to kill wasps. 73 P.3d at 1207. The landlord sought indemnification from its insurer, which disclaimed coverage due to the pollution exclusion. *Id.* at 1207–08. To give context to the coverage dilemma, the California Supreme Court summarized:

> To say there is a lack of unanimity as to how the clause should be interpreted is an understatement. Although the fragmentation of opinion defies strict categorization, courts are roughly divided into two camps. One camp maintains that the exclusion applies only to traditional environmental pollution into the air, water, and soil, but generally not to all injuries involving the negligent use or handling of toxic substances that occur in the normal course of business. These courts generally find ambiguity in the wording of the pollution exclusion when it is applied to such negligence and interpret such ambiguity against the insurance company in favor of coverage. The other camp maintains that the clause applies equally to negligence involving toxic substances and traditional environmental pollution, and that the clause is as unambiguous in excluding the former as the latter.

*Id.* at 1208–09. The Court also "recognized that the above categorization is an oversimplification, because the same court may fall into different camps depending on the situations presented." *Id.* at 1209 n.2.

3

The California Supreme Court also summarized the history of the pollution exclusion. *See id.* at 1209–10. The exclusion started as a qualified pollution exclusion, which was designed to shield insurers from liability when the insureds violated federal law, such as the Clean Air Act. *See id.* After years of litigation about the meaning of some of the words in the qualified pollution exclusion, insurance companies adopted the so-called total pollution exclusion in 1985. *Id.* Nevertheless, the purpose remained to protect insurers against exposure to substantial environmental clean-up costs resulting from their insureds' activities in violation of environmental laws and regulations. *See id.* at 1210. "Even commentators who represent the insurance industry recognize that the broadening of the pollution exclusion was intended primarily to exclude traditional environmental pollution rather than all injuries from toxic substances." *Id.*

The California Supreme Court then discussed the strengths and weaknesses of each argument and held the pollution exclusion did not apply to improper use of pesticides that harmed a single tenant. *See id.* at 1211–13. The insurance company's argument was based on a fallacy that the meaning can be discovered by interpreting words such as "irritant" or "discharge." *Id.* at 1214. The court found this argument unreasonable because it lacked a limiting principle allowing the insured to determine what, if any, perils were covered. *Id.* Therefore, the insurance company's argument was rejected as overly broad. *Id.* at 1215. Hence, the pollution exclusion only applied to traditional environmental liabilities, not to a standard suit for negligence in which a toxic substance was the agent of the harm. *See id.* at 1216–18.

The Washington Supreme Court conducted a similar analysis but reached the opposite conclusion. *See Quadrant*, 110 P.3d at 744. *Quadrant* concerned a suit by a tenant who became ill from the fumes coming off a sealant on a deck. *Id.* at 735. As in *MacKinnon*, the defendant had a commercial general liability policy that contained an absolute pollution exclusion. *See id.* at 736. The insureds filed a suit against the insurance company for denying coverage. *Id.*

The court started its analysis by reciting the standard for interpreting insurance contracts. *See id.* at 736–37. Insurance policies are contracts. *Id.* at 737. The Court considers the policy as a whole. *Id.* The court strives to apply the plain language of a policy. *Id.* "[A] clause is ambiguous only when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id.* (internal quotations omitted).

The court discussed the history and purpose of pollution exclusions. *See id.* "Pollution exclusions originated from insurers' efforts to avoid sweeping liability for long-term release of hazardous waste." *Id.* After litigation in the 1970s, insurance companies started using the current pollution exclusion in the mid-1980s. *See id.* The court also summarized the split between courts on the scope of the exclusion:

> Many courts have interpreted absolute pollution exclusions specifically in the context of claims for bodily injuries arising out of the release of toxic fumes. Some have concluded that the absolute pollution exclusion does not apply where personal injury has resulted from the negligent release of fumes during the ordinary course of the insured's business. *See, e.g., Nautilus Ins. Co. v. Jabar,* 188 F.3d 27, 29–31 (1st Cir.1999); *Am. States Ins. Co. v. Koloms,* 177 Ill.2d 473, 687

4

N.E.2d 72, 82, 227 Ill.Dec. 149 (1997) ("[T]he exclusion applies only to those injuries caused by traditional environmental pollution."). These courts have relied on several different theories. Some have concluded that the terms "discharge," "dispersal," "irritant," and "contaminant" are terms of art in environmental law, thus rendering the exclusion ambiguous. *See Belt Painting,* 763 N.Y.S.2d 790, 795 N.E.2d at 19 (citing *Nautilus Ins. Co.,* 188 F.3d at 30). Others have concluded that because the historical purpose of the prior qualified pollution exclusion was to shield insurers from sweeping liability for environmental cleanups, the absolute pollution exclusion clause could be reasonably interpreted to apply only to traditional environmental harms. *See id.; Koloms,* 227 Ill.Dec. 149, 687 N.E.2d at 81. Finally, some courts have concluded that a "commonsense approach" is necessary and the pollution exclusion should not be read to apply to "injuries resulting from everyday activities gone slightly, but not surprisingly, awry." *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037, 1043–44 (7th Cir.1992).

*Id.* at 737–38.

After discussing the history of interpretations of pollution exclusions in Washington, and based on its reading of the plain language of the insurance contract, the court found the pollution exclusion covered all torts in which pollutants, broadly defined, had a causal role in the injury for which coverage was sought. *See id.* at 738–41. Unambiguous contracts must be interpreted on their face. *Id.* at 741. Courts should not create an ambiguity where none exists. *Id.* The policy language, but its plain language, excluded coverage for bodily injury caused by the discharge of pollutants. *Id.* Fumes from sealant coming off of a deck is the discharge of a pollutant. *Id.* at 744. Thus, the exclusion barred the suit. *See id.* A dissent characterized the majority's interpretation of the contract too broad and inconsistent with precedent in Washington. *See id.* at 744–45, 748 (Chambers, J. dissenting).

The current case confronts this Court with the same analytic quandary represented by the California and Washington cases just discussed. The Court finds the reasoning of the California Supreme Court more persuasive. See *MacKinnon,* 73 P.3d at 1209–10, 1214–18.The purpose of the total pollution exclusion was and remains to protect insurance companies against traditional environmental liabilities. *See id.* at 1210. As applied to the facts here, ambiguity arises as to the meaning of pollutant and discharge, both of which are capable of such broad interpretations as to frustrate any reasonable purpose of the policy. As described by the Uhlers' expert, the foam insulation is not any of the listed pollutants. Although the list of pollutants is likely broader than those explicitly defined, the insurance company's definition admits to no limiting principle which would leave an insured conducting a business such as Energy Wise's with any assurance that any aspect of its business operations was *not* excluded by the policy Plaintiff sold.

Similar ambiguity afflicts Plaintiff's broad definition of discharge for the purpose of applying the total pollution exclusion. Energy Wise sprays insulation into buildings as the fundamental aspect of its business operations. By contrast, Energy Wise did not spray the insulation into the air, water, or earth in a manner that is consistent with traditional environmental liability. For example, Energy Wise did not spray the insulation into the air

around a public park, or allow it to run through a pipe into a water supply, or bury it in the ground. Under Plaintiff's argument almost any use of the products of Energy Wise's business that harmed a third party might be excluded. Seen in this light, the term discharge is rendered ambiguous and does not support resort to the exclusion for discharge of pollutants to relieve Cincinnati of its duty to defend and indemnify Energy Wise.

The Court disagrees with the reasoning of the Washington Supreme Court, finding its resort to plain language analysis overly facile. *See Quadrant*, 110 P.3d at 744. The opinion does not sufficiently account for the historical purpose and development of the pollution exclusion, nor for the reasonable expectations of an insured business that the pollution exclusion should be subject to a limiting principle that preserves the meaning and value in the general commercial liability policy. As suggested by Justice Chambers, applying the pollution exclusion in the circumstances presented by this type of case makes the exclusion so broad as to render the insurance policy almost meaningless. *See id.* at 748 (Chambers, J. dissenting). Similar to the rationale deemed insubstantial by the *Quadrant* dissent, Cincinnati's argument here for excluding coverage represents "an 'opportunistic afterthought,'" inimical to the expectations of coverage reasonably associated with the sale of a general commercial liability policy to a company engaged in the business of spraying insulation. *Id.*

Adopting the reasoning of *MacKinnon,* this Court concludes the meanings of pollutant discharge are ambiguous as applied to this case. The Court must interpret all ambiguities in favor of the insured and therefore does not read the policy to exclude coverage in this case. *See Parsons Hill*, 2010 VT 44, ¶ 21. Moreover, Plaintiff has not met its burden of showing an exclusion applies. *See CNA*, 172 Vt. at 330. The Court denies summary judgment to Plaintiff because Plaintiff is not entitled to judgment as a matter of law. *See* V.R.C.P. 56(a).

Although the Uhlers request a judgment declaring Plaintiff is obligated to indemnify Energy Wise, Defendants have not moved for summary judgment. Nevertheless, it appears there are no disputed facts and the Court's analysis in this order suggests Defendants are entitled to judgment as a matter of law. Thus, the Court will enter summary judgment in favor of Defendants in ten days unless Plaintiff responds with a persuasive demonstration as to why such relief is unwarranted. *See* V.R.C.P. 56(f)(3).

## **Order**

The Court **DENIES** Plaintiff's motion for summary judgment. The Court will enter summary judgment for Defendants unless Plaintiff convinces the Court otherwise within ten days.

Dated and signed electronically at Bennington, Vermont on January 23, 2014.

_____
John P. Wesley
Superior Court Judge

7